AMERICAN SURETY CO. v. CHOCTAW CONST. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1905.)

No. 1,962.

1. TRIAL—INSTRUCTIONS—BASIS IN EVIDENCE.

A trial court is not required to instruct a jury, at the instance of defendant, concerning a defense which, as a matter of law, is insufficiently supported by the evidence.

2. PRINCIPAL AND SURETY—ALTERATION OF CONTRACT—RIGHTS OF OBLIGEE.

Where a contract for materials to be furnished for the construction of a railroad did not refer to any survey, plat, or map, nor to any specific intermediate route which the railroad would follow, it was open to the

construction company to make any reasonable selection of routes between the designated termini; and the selection of one route instead of another did not constitute a change in the contract for materials, in such sense as to relieve the materialman's surety from liability for the materialman's default.

**8. CONTRACTS—ACTIONS—DEFENSES—EVIDENCE—SUFFICIENCY.**

In an action for the failure of a contractor to furnish railroad ties in accordance with his contract, evidence *held* sufficient to present for the consideration of the jury the defense of plaintiff's violation of its obligation under the same contract to furnish the motive power for the transportation of other ties.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

The Choctaw Construction Company and the Choctaw, Oklahoma & Gulf Railroad Company sued the American Surety Company to recover damages alleged to have been sustained by the failure of certain contractors, for whom the defendant was surety, to fulfill a contract for the sale and delivery of railroad ties. The construction company was engaged in building a railroad in Arkansas, and the railroad company was engaged in building one in the Indian Territory. They contemplated a connection of their lines by building from Howe Junction, in the territory, to within five miles of Little Rock, Ark., a distance of about 160 miles. With this in view, they jointly contracted with Graham & Miller, who were termed the contractors, for the ties that were necessary for the new construction. The contract, which was in writing, specified the prices of the several kinds of ties, and contained a clause providing that, if the contractors failed to perform their obligations, the Choctaw Companies might procure the ties elsewhere, and collect from them any additional expense thereby incurred. There was also a provision that the contractors should, within a fixed period, ship over the railroad lines of those companies, when completed, to South McAlester, in the Indian Territory, not less than 250,000 ties for commercial use, at an agreed freight rate of 12 cents per tie. For a better understanding of this provision, it should be stated that Graham & Miller had a contract to furnish another railroad company the ties which would be shipped to South McAlester at a price which would produce a net profit to them of 5 cents per tie, and it was claimed that the 12-cent freight rate was a concession, and one of the principal inducements which led them to enter into the contract before us. Graham & Miller, as principals, and the American Surety Company, as surety, executed to the Choctaw Companies a bond in the penal sum of $15,000, conditioned that the principals should perform all of their undertakings under the contract.

The contractors failed to fully comply with their contract, and the suit against the surety company was for the damages alleged to have been caused by their default, which were laid at the sum of $14,735.69. During the trial the surety company withdrew its denials of the correctness of the items composing the plaintiffs' claim and rested its defense upon three affirmative propositions: (1) Fraud practiced by the plaintiffs upon Graham & Miller in inducing them to enter into the contract; (2) a change in the contract, operating to release the surety on the bond; (3) damages sustained by Graham & Miller by reason of the refusal of the Choctaw Companies to transport the 250,000 commercial ties to South McAlester, thereby depriving the former of a large profit in their sale.

The defense of fraud was based upon the following contentions: For a part of the distance between the termini of the new line to be constructed, the Choctaw Companies had under consideration three routes, of which they made preliminary surveys. The first, known as the Dutch Creek route, was soon discarded. The other two were known as the Sugar Creek and the Booneville routes. They covered about 60 or 70 miles of an intermediate portion of the contemplated line. There was evidence tending to show that along the Sugar Creek route there was an abundance of timber, within the usual hauling distance, from which ties could be cut, and that there was a scarcity of such timber along a portion of the Booneville route. It was claimed that, before Gra-

ham & Miller made their bid to furnish ties, they were informed by an authorized official of the Choctaw Companies that the Sugar Creek route had been adopted, and that they entered into the contract upon the faith of that information, and after an examination of the timber along the line of survey, although, as a matter of fact, when they signed the contract the Booneville route had been officially selected as the permanent location. It was also claimed that the deficiency of tie timber along the line of the latter route was the cause of the default of the contractors, and that the official of the Choctaw Companies who had to do with the matter perpetrated a fraud upon them by a false representation as to the line on which the road would be built.

The defense that the contract with Graham & Miller had been altered, and that the surety was thereby released, was based substantially upon the contention that there had been a change of the route which was in contemplation when the contract was made.

The Circuit Court refused to instruct the jury upon the question of fraud, and also declined to submit to the jury the defense of damage to the contractors growing out of the refusal to transport the commercial ties. The question concerning a change in the contract was submitted to the jury under the instructions of the court, and was determined by them in favor of the plaintiffs. A verdict was returned against the surety company for the sum of $15,-123.63; being the amount of the plaintiffs' claim, and presumably accrued interest. From the judgment thereon this proceeding in error was prosecuted.

G. B. Rose and Charles Claflin Allen (John D. Johnson and Eben Richards, on the brief), for plaintiff in error.

J. M. Moore (W. B. Smith, on the brief), for defendants in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

1. The Circuit Court properly declined to give the instruction upon the question of fraud which was tendered by the surety company. A thorough examination of the record discloses no warrant for that ground of contention, and a trial court is not required to instruct a jury, at the instance of a defendant, concerning a defense which, as matter of law, is insufficiently supported by the evidence.

2. Much of the charge of the court and the briefs of counsel is devoted to a consideration of the defense that the contract, for the faithful performance of which the surety company obligated itself, was changed, and that the surety company was thereby released from liability upon the bond. We are unable to perceive any merit in this defense. The contractors knew when they went over the Sugar Creek route that the survey was merely preliminary, and that there had been no permanent location of the line. There was no contract or agreement, either express or implied, binding the constructing companies to the selection of that particular route. The Booneville or northern route was finally selected as the permanent line on October 29, 1898, and the contract and bond now in controversy were executed on the 12th of the following December. There is nothing whatever in either of those instruments even remotely indicating that the Sugar Creek route was intended. The termini of the contemplated line of railroad as specified in the contract were not changed. The Booneville and Sugar Creek surveys covered but an intermediate portion of the contemplated line of railroad,

and both of them ran in the same general direction. In a railroad sense, they were parallel, being at their point of widest separation, but a few miles apart. They diverged and came together at common points. The Booneville route was in the general line of connection between the termini specified in the contract, and, under the terms of that instrument, its selection was open to the constructing companies, in the fair fulfillment of their obligations under the contract. Had the contractors desired to restrict the companies to any particular line or route, they should have caused a stipulation to that effect to be inserted in the contract, or have made suitable reference to some map, plat, or other accompanying instrument to accomplish the same result. The problem of selection, between the two routes, as presented to the railroad officials, was simply one of expediency, which to a greater or less degree presents itself in the construction of every railroad of appreciable length. If one contracting to furnish materials for the construction of a railroad does not limit it to a certain line, route, or survey, the option of reasonable selection between the termini is open to the constructing company. Of course, this does not mean, as counsel contend, that a surety for the faithful performance of a contract to construct a railroad between two specified cities could be held responsible for a failure of his principals to construct a railroad between other cities widely distant from those mentioned. There was no reference in the contract before us to any survey, plat, map, or to any specific° intermediate route; and the line which was actually adopted, and on which the road was finally constructed, was fully within the letter of the contract. We are unable to see that, under the facts in the case which were either conceded or fully proved, the contract was changed at all; and this makes unnecessary a consideration of the question whether a change in a contract must be a material one, to effect a release of a surety.

3. There was evidence which tended to show that Graham & Miller had a contract to furnish the Missouri, Kansas & Texas Railway Company with ties at a price which, after deducting the cost of production, transportation, and delivery, would have yielded them a profit of 5 cents per tie; that, after the completion of the railroad of the Choctaw Companies, there were certain ties along the line which were cut by subcontractors of Graham & Miller, and were available for use under that contract; that, although Graham & Miller were embarrassed by lack of funds of their own to pay for the ties, the Missouri, Kansas & Texas Company stood ready to pay for them when they were inspected and loaded upon the cars, and that difficulty would thereby have been avoided; that the last-mentioned company was also ready to furnish the cars for the transportation of the ties to South McAlester, the place of delivery, but the Choctaw Companies, in violation of their express obligation, refused to furnish the motive power for their movement. The evidence upon this subject was sufficient to require its submission to the jury, and the Circuit Court should not have withdrawn that defense from their consideration. It should be observed, however,. that, viewing the evidence in a light most favorable to the surety

company, the damage proved to have been sustained by their principals by reason of the default of the Choctaw Companies might have amounted to, but could not have exceeded, the sum of $2,000.

The order will therefore be that if, within 30 days after this date,. the defendants in error shall file in the Circuit Court a remittitur and satisfaction in the sum of $2,000, and shall file a certified copy of such remittitur and satisfaction in this court, the judgment as. so reduced will be affirmed; otherwise it will be reversed, and.a new trial awarded. In either event the defendants in error shall' pay the costs of this proceeding in error.